UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

DAWN JENNINGS,                                        Case No.: 7:20-cv-15

                                   Plaintiff,         **<u>COMPLAINT</u>**

               -against-                              Plaintiff Demands a
                                                      Trial by Jury

BON SECOURS HEALTH SYSTEM,
BON SECOURS CHARITY HEALTH SYSTEM
MEDICAL GROUP, P.C., BON SECOURS CHARITY
HEALTH SYSTEM, INC.,
WMC HEALTH NETWORK-ROCKLAND, INC.,
GOOD SAMARITAN HOME HEALTH AGENCY, INC.,
GOOD SAMARITAN HOSPITAL OF SUFFERN, N.Y.,
GOOD SAMARITAN FOUNDATION FOR BETTER HEALTH, INC.,
EVELYN TONG, individually, JANET CONNERY, individually,
BARBARA WIATER, individually, LORRAINE POLIEY, individually,
and MARY SUSSMAN, individually,

                                   Defendants.
--------------------------------------------------------------------X

Plaintiff, DAWN JENNINGS (hereinafter referred to as "Plaintiff" or "JENNINGS"), by and through her attorneys, DEREK SMITH LAW GROUP, PLLC, hereby complains of Defendant BON SECOURS HEALTH SYSTEM, Defendant BON SECOURS CHARITY HEALTH SYSTEM MEDICAL GROUP, P.C., Defendant BON SECOURS CHARITY HEALTH SYSTEM, INC., Defendant WMC HEALTH NETWORK-ROCKLAND, INC., (hereinafter referred to as "BON SECOURS"), Defendant GOOD SAMARITAN HOME HEALTH AGENCY, INC., Defendant GOOD SAMARITAN HOSPITAL OF SUFFERN, N.Y., Defendant GOOD SAMARITAN FOUNDATION FOR BETTER HEALTH, INC. (hereinafter referred to as "GOOD SAMARITAN"), EVELYN TONG, JANET CONNERY, BARBARA WIATER, LORRAINE POLIEY, and MARY SUSSMAN, collectively hereinafter referred to as "Defendants" or "Defendant" upon information and belief, as follows:

## NATURE OF CASE

1.     Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), Title VII as amended by the Pregnancy Act of 1978 ("PDA"), the American with Disabilities Act of 1990, 42 U.S.C. § 12101 *et. seq.* ("ADA"), as amended by the Americans with Disabilities Act Amendments Act of 2008 ("the ADAAA"), the Family and Medical Leave Act of 1993, §2601 *et seq.* ("FMLA"), New York State Human Rights Law Executive Law § 296 *et seq.* (the "NYSHRL"), and New York Labor Law, Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.*, tort law, promissory estoppel, quantum meruit, and unjust enrichment, based upon the supplemental jurisdiction of this Court pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. §1367, seeking declaratory and injunctive relief and damages to redress the injuries that Plaintiff has suffered as a result of, *inter alia*, pregnancy, disability, sex/gender, and familial status discrimination, along with having been subjected to a hostile work environment, failure to accommodate a pregnancy-related condition and forced into an early leave of absence, retaliation, and wrongful termination by Defendants.

## JURISDICTION AND VENUE

2.     Jurisdiction of this action is conferred upon this Court as this action involves a Federal Question under Title VII, ADA, ADAA, PDA, and FMLA. This Court also has jurisdiction pursuant to 29 U.S.C. § 2617; 28 U.S.C §1331, § 1343 and pendent jurisdiction thereto.

3.     Additionally, this Court has supplemental jurisdiction over the State causes of action asserted herein.

4.     In June 2019, Plaintiff filed a charge against Defendants with the United States Equal

Employment Opportunity Commission ("EEOC"). The federal charge numbers are 520-2019-03280, 520-2019-05324, 520-2019-05321, 520-2019-05322, 520-2019-05320, 520-2019-05323, 520-2019-05325, 520-2019-05326.

5.    Around October 8, 2019, Plaintiff received the EEOC's Right to Sue Letter.

6.    Plaintiff satisfied all administrative prerequisites and is filing this case within ninety (90) days of receiving the EEOC's Right to Sue Letter.

7.    Venue is proper in this district because the events or omissions that give rise to the claims asserted herein occurred in Rockland County, within the Southern District of New York.

## PARTIES

8.    At all times material, Plaintiff, DAWN JENNINGS was and is a resident of New York, Orange County.

9.    At all times material, Defendant BON SECOURS HEALTH SYSTEM (hereinafter referred to as "BSHS") is a foreign professional corporation duly existing by the virtue and laws of the State of Maryland and doing business in the State of New York with its principle place of business located at 255 Lafayette Avenue, Suffern, New York 10901.

10.    At all times material, Defendant BON SECOURS HEALTH SYSTEM MEDICAL GROUP, P.C. (hereinafter referred to as "BSCHSMG") is a domestic professional corporation duly existing by the virtue and laws of the State of New York and doing business in the State of New York.

11.    At all times material, Defendant BON SECOURS CHARITY HEALTH SYSTEM, INC. (hereinafter "BSCHSI") is a domestic not-for-profit corporation duly existing by the virtue and laws of the State of New York and doing business in the State of New York.

12.    At all times material, Defendant GOOD SAMARITAN HOME HEALTH AGENCY,

INC. (hereinafter "GSHHA") is a domestic professional corporation duly existing by the virtue and laws of the State of New York and doing business in the State of New York.

13.   At all times material, Defendant GOOD SAMARITAN HOSPITAL OF SUFFERN, N.Y. (hereinafter referred to as "Good Samaritan Hospital") is a domestic not-for-profit corporation duly existing by the virtue and laws of the State of New York and doing business in the State of New York.

14.   At all times material, Defendant GOOD SAMARITAN FOUNDATION FOR BETTER HEALTH, INC. (hereinafter "GSF") is a domestic not-for-profit corporation duly existing by the virtue and laws of the State of New York and doing business in the State of New York.

15.   At all times material, Defendants BSHS, BSCHSMG, BSCHSI and Good Samaritan Hospital, GSHHA, GSF were either joint employers or a single integrated employer of Plaintiff (hereinafter collectively referred to as "Defendants").

16.   At all times material, WMC HEALTH NETWORK-ROCKLAND, INC. is a domestic not-for-profit corporation duly existing by the virtue and laws of the State of New York and doing business in the State of New York.

17.   At all times material Defendants are a member of WMC HEALTH NETWORK-ROCKLAND, INC.

18.   Defendants are a medical service company connecting patients with numerous doctors, nurses, and hospitals in the State of New York.

19.   At all times material, Defendant Janet Connery (hereinafter referred to as "Connery") was and is the Senior Human Resources Manager for Defendants.

20.   At all times material, Defendant Connery held supervisory authority over Plaintiff,

controlling many of Plaintiff's job duties and the power to hire and fire Plaintiff.

21.  At all times material, Defendant Evelyn Tong (hereinafter referred to as "Tong") was and is the Clinical Manager for Defendants.

22.  At all times material, Tong held supervisory authority over Plaintiff, controlling many of Plaintiff's job duties and power to hire and fire Plaintiff.

23.  At all times material, Rhoda Famodimu (hereinafter referred to as "Famodimu") was and is a Home Care Nurse Manager for Defendants.

24.  At all times material, Famodimu held supervisory authority over Plaintiff, controlling many of Plaintiff's job duties and the power to hire and fire Plaintiff.

25.  At all times material, Defendant Mary Sussman (hereinafter referred to as "Sussman") was and is a Home Care Nurse Manager for Defendants.

26.  At all times material, Defendant Sussman held supervisory authority over Plaintiff, controlling many of Plaintiff's job duties and the power to hire and fire Plaintiff.

27.  At all times material, Defendant Barbara Wiater (hereinafter referred to as "Wiater") was and is the Home Health Aide Scheduler for Defendants.

28.  At all times material, Defendant Wiater held supervisory authority over Plaintiff, controlling many of Plaintiff's job duties.

29.  At all times material, Defendant Lorraine Poliey (hereinafter referred to as "Poliey") was and is the Director of Patient Services for Defendants.

30.  At all times material, Defendant Poliey held supervisory authority over Plaintiff, controlling many of Plaintiff's job duties and the power to hire and fire Plaintiff.

31.  At all times material, Defendants maintained a Collective Bargaining Agreement with 1199 Service Employees International Union (hereinafter referred to as "1199 SEIU").

32.  At all times material, 1199 SEIU was and is a domestic not-for-profit corporation duly existing by the virtue and laws of the State of New York and doing business in the State of New York with its principle place of business located at 99 Church Street, 4th Floor, White Plains, New York 10601.

33.  At all times material, Plaintiff is and was a member of 1199 SEIU during her employment with Defendants.

34.  At all times material, Tamoya Norwood was Plaintiff's Representative from 1199 SEIU.

35.  At all times material, Defendants meet the definition of an employer under all applicable state and local statutes.

## MATERIAL FACTS

36.  Around July 14, 2014, Defendants hired Plaintiff as a full time Certified Home Health Aide ("HHA") for the 1 Crosfield Avenue, Suite 202, West Nyack, New York 10994 office.  Defendants assigned Plaintiff several patients within a designated area wherein Plaintiff's responsibilities included cooking, cleaning, lifting and bathing elderly patients and/or patients recovering from surgery. Defendants paid Plaintiff for at a minimum of approximately 37 ½ hours weekly or 75 hours worked biweekly.

37.  Around July 2017, Plaintiff suffered a miscarriage.  At the time, Plaintiff had serious concerns that her treatment/care for a 400 lb. patient had a negative effect on her pregnancy that could have been related to her miscarriage because she bled after treating/lifting that patient.

38.  Around April 6, 2018, Plaintiff's physician provided Plaintiff with a light duty medical restriction with no lifting anything over 10 lbs.

39.   Defendants rejected Plaintiff's request for a reasonable accommodation for her medical restriction of not lifting anything more than 10 lbs. and failed to have an interactive dialogue with Plaintiff.

40.   On or about April 6, 2018, Defendant Sussman left Plaintiff a voicemail stating that Plaintiff needed to speak with Human Resources because "GENERALLY THERE'S NO SUCH THING AS LIGHT DUTY" and that Plaintiff "WILL NEED TO GO ON A LEAVE OF ABSENCE."

41.   That same day, Defendants' rejected Plaintiff's attempt to engage in an interactive dialogue by denying outright Plaintiff's request for a reasonable accommodation by performing administrative work in Defendants' West Nyack office.

42.   On or about April 11, 2018, Plaintiff had to undergo an emergency operation due to her high-risk pregnancy.

43.   Around the same time, Defendant CONNERY offered Plaintiff a greeter position at the hospital as an accommodation for Plaintiff's medical restriction.

44.   Unfortunately, Plaintiff's doctor advised against accepting the greeter position because it was not conducive to her high-risk pregnancy and she could not stand for eight hours a day.

45.   At all times material, Plaintiff complained that Defendants were not providing her with a reasonable accommodation due to her medical restriction related to her pregnancy and failed to engage in an interactive dialogue.

46.   Defendants discriminated against Plaintiff because of her sex/gender and disability related to her pregnancy and for requesting a reasonable accommodation.

47.   Around April 16, 2018, Defendant Tong intimated inconsistencies in Plaintiff's request for a reasonable accommodation due to Plaintiff's light duty restriction and stated to Connery "her

story changed drastically on Friday" and "she needed the restriction because she was having the procedure done which I think I know what she had done but you know, and now that the procedure was done she doesn't need the restriction anymore.." Defendant Tong denied this making this discriminatory comment.

48. Around April 19, 2018, Plaintiff's doctor faxed a second note to Defendants detailing Plaintiff's medical restriction. Plaintiff's doctor also advised Plaintiff that if Defendants could not provide her with light duty work, she could not return to work or else she would be jeopardizing the life of the unborn child and herself.

49. Between April 19, 2018 and April 30, 2018, Defendants failed to provide Plaintiff with a reasonable accommodation and/or engage in an interactive dialogue thereby forcing Plaintiff to take early maternity leave and leave under the Family and Medical Leave Act ("FMLA").

50. Defendants discriminated against Plaintiff on the basis of her sex/gender, pregnancy, and pregnancy-related condition.

51. Consequently, Plaintiff's maternity leave was cut short after the birth of her child and Plaintiff did not get the bonding time with her newborn child because she had to return to work causing an emotional strain on Plaintiff.

52. At all times material, Plaintiff's Union Representative Tamoya Norwood (hereinafter "Norwood") was aware of Defendants' failure to accommodate, hostile work environment, discriminatory and retaliatory treatment against Plaintiff.

53. Defendants subjected Plaintiff to a hostile work environment on the basis of her pregnancy and disability and failed to provide Plaintiff with a reasonable accommodation and/or engage in an interactive dialogue.

54. Defendants discriminated and retaliated against Plaintiff for requesting a reasonable accommodation for a pregnancy- related disability by telling Plaintiff that there was no light duty work available for her and adversely changing the terms of her employment while she was out on maternity leave.

55. Upon returning to work around November 5, 2018, Plaintiff learned that while she was out on maternity leave Defendants removed Plaintiff's designated area and changed Plaintiff's pay structure. Defendants were solely paying Plaintiff for the number of hours worked and that Plaintiff could work in the office to increase her hours.

56. Notably, the latter option was the same reasonable accommodation request Plaintiff had requested for her light duty medical restriction related to her pregnancy in which Defendants adamantly denied and instead forced Plaintiff take maternity leave early.

57. By removing Plaintiff's designated area, Defendants assigned a patient to Plaintiff that required her to drive ninety (90) miles per visit when there were other Home Health Aides in that area that could have been assigned to that patient.

58. By way of example, Defendants assigned Plaintiff to a patient for a two hour visit twice a week that was 90 miles away to then have the Plaintiff drive back to the office which is approximately 60 miles away from Plaintiff's home.

59. Defendants did not take the same adverse employment actions against other Home Health Aides.

60. Defendants discriminated against Plaintiff on the basis of her sex/gender, pregnancy, disability related to her pregnancy, and subjected Plaintiff to a hostile work environment.

61. Consequently, Plaintiff's pay and hours were reduced significantly (i.e. from 75 to 12 hours biweekly), causing Plaintiff to lose her benefits which she needed given that she just had a

child. Ultimately, Defendants failed to restore Plaintiff to her original position.

62.  Defendant Tong failed to take any remedial measures when Plaintiff complained of the sudden adverse change and only to Plaintiff's position.

63.  Instead, around December 28, 2018, the only option for Plaintiff was to agree to give up the above-mentioned patient and to call in every morning to see if any patients were added to Plaintiff's schedule. If not, Plaintiff would take unpaid time off.

64.  Around January 1, 2019, Plaintiff complained to her Union Representative, Norwood, that Defendants were and are discriminating against her due to her pregnancy, failed to accommodate her, failed to keep Plaintiff informed of the change in Plaintiff's position while she was out on leave and/or communicate with Plaintiff at all while out on leave regarding her position, and that Defendants have significantly reduced Plaintiff's hours from 37.5 a week to 4 to 10 hours a week.

65.  Between January 1, 2019 and February 2019, Norwood scheduled a meeting with Defendants and Plaintiff to address Defendants' adverse employment actions against Plaintiff since her return from maternity leave.  Specifically, Defendants decision to change Plaintiff's position, pay structure significant reduction in Plaintiff's pay, and loss of benefits.

66.  At the end of the requested meeting and under the recommendation of Norwood, the parties agreed to provide Plaintiff with thirty (30) hours of work including one day of work at the office in order for Plaintiff to maintain her health benefits. However, Defendant Tong suggested it was time for Plaintiff to "move on."

67.  Recognizing the effect Defendant Tong's comment had on Plaintiff, Norwood suggested that Defendants transfer Plaintiff to a hospital position as soon as one became available.  The parties agreed that Plaintiff could take the "Care Partner" class for a Care

Partner job at the hospital and Defendants and the Union would assist with pushing Plaintiff's application through at the hospital.

68. Defendants retaliated against Plaintiff for complaining about Defendants' failure to accommodate, forcing Plaintiff to take early maternity leave and discriminatory treatment by taking corrective action against Plaintiff.

69. Between March 13, 2019 and June 7, 2019, Plaintiff attended the Care Partner class in hopes of leaving the hostile work environment she had been subjected to at Good Samaritan.

70. Around March 23, 2019, at approximately 7:30 a.m., Plaintiff called out sick and left voicemails on Defendant Tong and Defendant Wiater's phones.

71. Around March 26, 2019, Defendants falsely accused Plaintiff of not calling in sick the day before and denied receiving a voicemail from Plaintiff. Defendant Tong pulled Plaintiff out of Plaintiff's Care Partner class to reprimand Plaintiff for not calling out sick.

72. Defendants ignored Plaintiff's efforts to protest and prove that she did in fact leave a voicemail calling out sick.

73. Furthermore, Plaintiff learned that the patient did in fact receive a phone call from Defendants on March 23, 2019 to inform him that Plaintiff had called out sick.

74. Defendants subjected Plaintiff to a hostile work environment on the basis of her sex/gender, pregnancy, disability related to her pregnancy and for engaging in protected activities on the basis her pregnancy and disability related to her pregnancy.

75. Thereafter, Defendants went against company policy by giving Plaintiff a final warning when Plaintiff had not once received a first warning in her four ½ years of employment.

76. Additionally, Defendants required that the Plaintiff talk to a live person on the day(s) she had to call out sick. However, Defendants were fully aware that Plaintiff could not fulfill this

requirement because the company policy in the employee handbook required employees to call in two hours before the office opens on the days the employees call out sick.

77.   Defendants subjected Plaintiff to a hostile work environment on the basis of her sex/gender, pregnancy, pregnancy-related condition and for engaging in a protected activity on those bases.

78.   Defendants discriminated and retaliated against Plaintiff on the basis of her pregnancy, sex/gender, disability, familial status and retaliated against Plaintiff for complaining of discriminatory treatment.

79.   Defendants did not give any of Plaintiff's colleagues the same requirement.

80.   Additionally, Defendants were aware that by taking corrective action against Plaintiff, Defendants made Plaintiff ineligible to transfer to a Care Partner position in the hospital.

81.   Between April 18, 2019 and April 25, 2019, Defendants received notice of Plaintiff's Charge filed with the Equal Employment Opportunity Commission for the claims alleged herein.

82.   Around May 8, 2019, Defendants met with Plaintiff and Norwood regarding their decision to deny Plaintiff's grievance. Additionally, after said meeting, Defendant Connery separately told Norwood that Defendants would not contest any application for unemployment insurance benefits if Plaintiff simply resigned.

83.   Around May 31, 2019, Defendants further discriminated and retaliated against Plaintiff by changing the terms of her employment and going against the previously agreed to expectation of assignments by requiring Plaintiff to see the patients assigned to her on any given day of the week whether it was for one or more patients with the option to return to the

office for the remainder of the day.

84.   Between July 1, 2019 and December 12, 2019, Defendants subjected Plaintiff to a hostile and toxic work environment that caused Plaintiff severe emotional distress. By way of example only, without notice or explanation, Defendants removed a patient from Plaintiff further reducing Plaintiff's ability to work.  Additionally, Plaintiff later learned from the patient that Defendants faulted Plaintiff's familial status for her removal/replacement.

85.   Additionally, around August 1, 2019, after having applied for numerous Care Partner positions at the hospital since March 2019 and completed several Care Partner classes, Defendants informed Plaintiff that Plaintiff was no longer ineligible to apply for a Care Partner job at the hospital due to the corrective action/final warning in Plaintiff's personnel file.

86.   Around November 8, 2019, Defendants informed Plaintiff that she was removed from the schedule for insubordination even though Plaintiff had asked for clarification of her assignments.

87.   Around November 12, 2019, without reason or notice Defendants discriminated against and retaliated against Plaintiff by telling Plaintiff she had to return company property as she was being placed on suspension of employment.

88.   Around December 12, 2019, Defendant Good Samaritan wrongfully terminated Plaintiff's employment for pretextual reasons by stating that Plaintiff was refusing assignments when Defendants were not assigning her any patients and Plaintiff had repeatedly asked Defendants for clarification of her assignments and/or for additional patients. Additionally, Defendants used the previous erroneous corrective action/final warning against Plaintiff to terminate Plaintiff.

89.   Notably, Defendants never addressed Plaintiff's complaints of discrimination and

retaliation on the basis of her sex/gender, pregnancy-related condition and disability.

90.   Defendants subjected Plaintiff to severe emotional distress during her pregnancy and forced her to take early maternity leave due to a pregnancy-related disability.

91.   Defendants subjected Plaintiff to ongoing discriminatory and retaliatory treatment.

92.   Defendants retaliated against Plaintiff for exercising her protected rights regarding Plaintiff's sex/gender, pregnancy and disability by asking for a reasonable accommodation in connection with her sex/gender, pregnancy and disability and by wrongfully terminating Plaintiff's employment.

93.   Defendants targeted Plaintiff and took adverse employment actions against her on the basis of her pregnancy-related condition, disability, sex/gender, and familial status.

94.   Defendants subjected Plaintiff to a hostile work environment and retaliated against Plaintiff for engaging in multiple protected activities. Defendants retaliated against Plaintiff for engaging in protected activities and subjected Plaintiff to multiple adverse employment actions including unlawful termination.

95.   Defendants failed to provide Plaintiff with a reasonable and/or pregnancy-related accommodation and failed to engage in an interactive dialogue with Plaintiff.

96.   Ultimately, Defendants discriminated against Plaintiff because of her sex/gender, familial status, pregnancy, and disability, and retaliated against Plaintiff for opposing Defendants unlawful sex discrimination, gender discrimination, familial status discrimination, pregnancy discrimination, disability discrimination and subjecting Plaintiff to a hostile work environment.

97.   Defendants retaliated against Plaintiff for attempting to exercise her protected rights regarding her pregnancy-related disability and interfered with her rights under the FMLA.

98.  Defendants did not treat other HHA's equally and accommodated HHA's that did not want to travel to a specific area to care for patients. Additionally, all of the other HHA's were and are assigned to at least three (3) patients a day, five (5) days a week.

99.  As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

100. As a result of Defendants' discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer severe emotional distress and physical ailments including extreme anxiety and severe depression, with unknown consequences to her at the time unborn child.

101.  As a result of Defendants' unlawful, discriminatory and retaliatory actions, Plaintiff has high blood pressure and at the request of her family members sought mental health treatment in which she has been prescribed two medications for her diagnosis. Plaintiff is having difficulty eating and sleeping and her familial relationships have been strained.

102. Plaintiff has also endured unwarranted financial hardships and irreparable damage to her professional reputation. To date Plaintiff has not returned to her original position. Defendants' actions and false representations caused Plaintiff to lose potential employment opportunities further causing a steady loss of income.

103. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation, which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting condition.

104. Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine. Defendants' actions

constituted a continuing violation of the applicable federal and state laws.

105. The above are just some of the examples of the pattern and practice of unlawful, discriminatory, hostile, and retaliatory conduct to which Defendants subjected Plaintiff.

106. Defendants acted with malice, in conscious and deliberate disregard of Plaintiff and Plaintiff's child's health and interests.

107. As Defendants' conduct has been malicious, willful, and outrageous, conducted with full knowledge of the law, Plaintiff demands Punitive damages against all Defendants, jointly and severally.

108. Plaintiff hereby requests reinstatement to her position.

**AS A FIRST CAUSE OF ACTION:**
**DISCRIMINATION UNDER TITLE VII**
**<u>(NOT AGAINST INDIVIDUAL DEFENDANTS)</u>**

109. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this complaint as if more fully set forth herein at length.

110. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a) [§ 703] provides that it shall be an unlawful employment practice for an employer: "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . . .

111. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a)(1) as amended by the Pregnancy Discrimination Act, 42 U.S.C. §2000e(k) prohibits discrimination in the terms and conditions of employment and discharge of an employee based on the employee's pregnancy.

112. The Defendants' exact number of employees are unknown but upon information and

belief there are well more than the statutory minimum.

113. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by subjecting Plaintiff to discrimination on the basis of her pregnancy and sex/gender by failing to accommodate Plaintiff's pregnancy-related condition, engaging in the interactive dialogue and instead forcing Plaintiff to take early maternity leave. Additionally, Defendants changed the terms of Plaintiff's employment during her maternity leave and failed to return her to her original position.

114. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS A SECOND CAUSE OF ACTION:
### HOSTILE WORK ENVIRONMENT UNDER TITLE VII
### (NOT AGAINST INDIVIDUAL DEFENDANTS)

115. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this complaint as if more fully set forth herein at length.

116. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq. provides for relief based upon the unlawful employment practices of Defendants. Among other discriminatory comments and conduct, Defendants discriminated against Plaintiff on the basis of sex/gender and pregnancy, creating a hostile work environment. Plaintiff complains of Defendants' violations of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's sex/gender, pregnancy, and pregnancy-related disability.

117. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a)(1) as amended by the Pregnancy Discrimination Act, 42 U.S.C. §2000e(k) prohibits discrimination in the terms and conditions of employment and discharge of an employee based on the employee's pregnancy.

118. The exact number of employees of Defendants' are unknown, but upon information and

belief, there are well more than the statutory minimum.

119. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by subjecting Plaintiff to discrimination on the basis of her pregnancy, pregnancy-related condition, and sex/gender, failing to accommodate Plaintiff's pregnancy-related condition, and subjecting Plaintiff to a hostile work environment.

120. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A THIRD CAUSE OF ACTION:**
**RETALIATION UNDER TITLE VII**
**(NOT AGAINST INDIVIDUAL DEFENDANTS)**

121. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this complaint as if more fully set forth herein at length.

122. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a) [§ 703] provides that it shall be an unlawful employment practice for an employer: "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . . .

123. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a)(1) as amended by the Pregnancy Discrimination Act, 42 U.S.C. §2000e(k) prohibits discrimination in the terms and conditions of employment and discharge of an employee based on the employee's pregnancy and retaliating against Plaintiff with respect to the terms, conditions or privilege of employment because of her opposition to the unlawful employment practices of Defendants by suspending and wrongfully terminating Plaintiff's employment.

124. The exact number of employees of Defendants are unknown, but upon information and belief, there are well more than the statutory minimum.

125. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by subjecting Plaintiff to discrimination on the basis of her pregnancy, pregnancy-related condition, and sex/gender and retaliating against Plaintiff with respect to the terms, conditions or privilege of employment because of her opposition to the unlawful employment practices of Defendants by falsely accusing Plaintiff of no call/no show, suspending and wrongfully terminating Plaintiff's employment.

126. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A FOURTH CAUSE OF ACTION: DISCRIMINATION AND FAILURE TO ACCOMMODATE UNDER THE ADA, AS AMENDED BY THE ADAAA (NOT AGAINST INDIVIDUAL DEFENDANTS)

127. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this complaint as if more fully set forth herein at length.

128. Defendants violated Title I of the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, by the ADAAA, as these titles appear in volume 42 of the United States Code, beginning at § 12101.

129. §12112. [§ 102] specifically states "(a) General Rule. - No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

130. Defendant regarded Plaintiff as having an impairment, and there was a record of an impairment, that substantially limited one or more of life's major activities. Defendants violated the section cited herein by having a record of Plaintiff's disability related to her pregnancy and previous miscarriage, then failing to provide and consider Plaintiff's numerous requests for a

reasonable accommodation based on pregnancy and associated disability, as well as creating and maintaining discriminatory working conditions, and otherwise discriminating and retaliating against the Plaintiff because of her pregnancy-related condition.

131. Plaintiff's disability and exercise of her rights was the motivating factor in the Defendants' decision to unlawfully discriminate against Plaintiff. Defendants could have given Plaintiff a reasonable accommodation of working in the West Nyack office but instead forced Plaintiff to take early maternity leave.

132. Plaintiff could perform the essential functions of her position with or without reasonable accommodations.

133. Defendants changed the terms of Plaintiff's employment while out on maternity leave and failure to provide Plaintiff with such notice.

134. Plaintiff is protected against discrimination, a reasonable accommodation, hostile work environment under the ADA and ADAAA.

135. Defendants' actions constituted a serious and continuing course of conduct in violation of the applicable federal and state laws.

136. Defendants violated the above, and Plaintiff suffered numerous damages as a result.

## AS A FIFTH CAUSE OF ACTION: RETALIATION UNDER THE ADA, AS AMENDED BY THE ADAAA (NOT AGAINST INDIVIDUAL DEFENDANTS)

137. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this complaint as if more fully set forth herein at length.

138. §12203. [§ 503] states, "(a) Retaliation. - No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by the chapter or because such individual made a charge, testified, assisted, or participated in any

manner in an investigation, proceeding, or hearing under the chapter."

139. Defendant retaliated against Plaintiff by instead forcing Plaintiff to take early maternity leave.

140. Defendants violated the above, and Plaintiff suffered numerous damages as a result.

## AS A SIXTH CAUSE OF ACTION FOR VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT 29 U.S.C. § 2601 et seq. (NOT AGAINST INDIVIDUAL DEFENDANTS)

141. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as is fully set forth at length.

142. § 2612 of the Family Medical Leave Act (FMLA) states in pertinent part:

(a) In general

(1) Entitlement to leave - Subject to § 2613 of this title, an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following:

(A) Because of the birth of a son or daughter of the employee and in order to care for such son or daughter.

(B) Because of the placement of a son or daughter with the employee for adoption or foster care.

(C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition.

(D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

(E) Because of any qualifying exigency (as the Secretary shall, by regulation, determine) arising out of the fact that the spouse, or a son, daughter, or parent of

the employee is on covered active duty (or has been notified of an impending call

or order to covered active duty) in the Armed Forces

143. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS A SEVENTH CAUSE OF ACTION:
### RETALIATION AND INTERFERENCE UNDER THE
### FAMILY AND MEDICAL LEAVE ACT 29 U.S.C. § 2601 *et seq.*
### (NOT AGAINST INDIVIDUAL DEFENDANTS)

144. Plaintiff repeats and re-alleges each and every allegation made in the above

paragraphs of this complaint as is fully set forth at length.

145. § 2615 of the FMLA states as follows:
   Prohibited acts
   (a) Interference with rights
   (1) Exercise of rights. It shall be unlawful for any employer to
      interfere with, restrain, or deny the exercise of or the attempt to
      exercise, any right provided under this subchapter.
   (2) Discrimination. It shall be unlawful for any employer to
      discharge or in any other manner discriminate against any
      individual for opposing any practice made unlawful by
      this subchapter.

146. Defendants unlawfully interfered, restrained, and denied Plaintiff's right to exercise

and attempt to exercise Plaintiff's rights under the above section and discriminated and

retaliated against Plaintiff for opposing Defendants unlawful employment practice and

attempting to exercise Plaintiff's rights.

147. Defendants violated the above by interfering with Plaintiff's exercise of her rights

under the FMLA due to her pregnancy related medical condition.

148. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS AN EIGHTH CAUSE OF ACTION: DISCRIMINATION
### UNDER NEW YORK STATE LAW
### (AGAINST ALL DEFENDANTS)

149. Plaintiff repeats and re-alleges each and every allegation made in the above

paragraphs of this complaint.

150. New York State Executive Law § 296 provides that, "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

151. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her sex, disability and pregnancy related condition and failing to provide Plaintiff with a reasonable accommodation.

152. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law §296.

## AS A NINTH CAUSE OF ACTION: HOSTILE WORK ENVIRONMENT UNDER NEW YORK STATE LAW (AGAINST ALL DEFENDANTS)

153. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

154. New York State Executive Law § 296 provides that, "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

155. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her sex, familial status, disability and pregnancy related condition subjecting

Plaintiff to a hostile work environment.

156. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law §296.

## AS A TENTH CAUSE OF ACTION: RETALIATION UNDER NEW YORK STATE LAW (AGAINST ALL DEFENDANTS)

157. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

158. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

159. Defendants engaged in an unlawful discriminatory practice by retaliating against Plaintiff for requesting a reasonable accommodation and complaining of discrimination and retaliation on the basis of her sex/gender, pregnancy and disability.

160. Plaintiff makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law §296.

## AS AN ELEVENTH CAUSE OF ACTION: AID & ABET UNDER NEW YORK STATE LAW (AGAINST ALL DEFENDANTS)

161. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of the complaint.

162. New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any

of the acts forbidden under the article, or to attempt to do so."

163. Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the discriminatory behavior as stated herein.

164. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants jointly and severally for all damages including compensatory, emotional distress, statutory, punitive damages, liquidated damages, attorney's fees and costs in an amount to be determined at the time of trial and awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful conduct.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.


Dated: New York, New York
       January 2, 2020


                                        Respectfully submitted,

                                        **DEREK T. SMITH LAW GROUP PLLC**
                                        *Attorneys for Plaintiff*

                                        By:  /s/Melissa Mendoza
                                             Melissa Mendoza, Esq.
                                             One Penn Plaza, Suite 4905
                                             New York, NY 10119
                                             (212) 587-0760

## <u>CERTIFICATE OF SERVICE</u>

I, Melissa Mendoza, hereby certify that on January 2, 2020, the foregoing document was filed with the Clerk of the Court and served via ECF in accordance with the Federal Rules of Civil Procedure, and/or the Southern District's Local Rules, and/or the Southern District's Rules on Electronic Service, which will send notification of such public filing to all counsel registered to receive such notice.

       */s/ Melissa Mendoza*
       MELISSA MENDOZA